FILED
U.S. DISTRICT COURT
WD OF NY

NOV 23 2004

AT_____ O'C_____ M.
BY_____
TITLE____

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                Plaintiff,

v.

COMPREHENSIVE EMPLOYEE
MANAGEMENT, INC. and
MARK JAMIESON,

                Defendants.

02-CR-171E(Sr)

## REPORT, RECOMMENDATION AND ORDER

Pursuant to 28 U.S.C. § 636(b)(1)(A), all pretrial matters in this case have been referred to the undersigned by the Hon. John T. Elfvin. Dkt. #12.

## PRELIMINARY STATEMENT

The defendants, Comprehensive Employee Management, Inc. and Mark Jamieson, are each charged in seven counts of an eleven count indictment with violations of 18 U.S.C. § 371 (Count I); and 42 U.S.C. § 7413(c)(1) (Counts II, III, IV, V, VI, and VII), and have filed a motion to dismiss certain of those counts.

At issue in this motion are Counts II through VII. Counts II, IV, and VI allege that defendants failed to adequately wet Regulated Asbestos Containing Material ("RACM"), before stripping it from pipes during the course of a demolition project at the

Westinghouse Plant on May 25, 1999 (Count II); May 26, 1999 (Count IV); and May 27, 1999 (Count VI).  Counts III, V and VII allege that defendants failed to carefully lower the RACM to the ground during the course of a demolition project at the Westinghouse facility on May 25, 1999 (Count III); May 26, 1999 (Count V); and May 27, 1999 (Count VII).

Defendants move for dismissal of Counts IV through VII as multiplicitous of Counts II and III of the indictment, and dismissal of Count III as multiplicitous of Count II of the indictment.  Dkt. ##26; 44, ¶¶ 23-35.[1]  More specifically, defendants argue that the alleged conduct was part of a single and continuous course of conduct which should not be divided into separate offenses by date and that the failure to adequately wet and carefully lower the RACM constitutes a singular offense of improper removal of asbestos.  For the following reasons, it is recommended that Counts II, IV and VI be consolidated and that Counts III, V and VII be consolidated, but that the defendants' motions otherwise be denied.

## DISCUSSION & ANALYSIS

### Multiplicity – Distinct Charges Based Upon Distinct Conduct

> To assess whether the two offenses charged separately in an indictment are really one offense charged twice, the "same elements" test or the "*Blockburger*"[2] test is applied. The *Blockburger* test examines whether each charged offense contains an element not contained in the other

---

[1] Defendants' omnibus discovery motions are resolved in a separate Decision and Order.

[2] *Blockburger v. United States*, 284 U.S. 299 (1932).

> charged offense.  If there is an element in each offense that
> is not contained in the other, they are not the same offense
> for purposes of double jeopardy, and they can both be
> prosecuted.

*United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999) (internal citations omitted).

The defendants rely upon *United States v. Seda*, in support of their argument that there is but one offense charged, *to wit*, the improper removal of asbestos.  978 F.2d 779 (2d Cir. 1992).   In that case, the Court of Appeals for the Second Circuit went beyond the elements of the statute to examine the allegations of the indictment and concluded that because the submission of false loan applications charged as a violation of 18 U.S.C. § 1014 was simply a species of the bank fraud charged as a violation of 18 U.S.C. § 1344, the government had to elect which count would be prosecuted before trial.  Subsequently, however, the Court of Appeals recognized that the *Seda* analysis was precluded by the Supreme Court's decision in *United States v. Dixon*.  *Chacko*, 169 F.3d at 146-47.  In *Dixon*, the United States Supreme Court overruled its decision in *Grady v. Corbin,* which announced a "same-conduct" rule in addition to the *Blockburger* "same element" test, stating that the "'same-conduct' rule . . . . is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy."  509 U.S. 688, 704 (1993), *overruling* 495 U.S. 508 (1990).  Thus, a strict application of the *Blockburger* test to the elements of the charged statutes is appropriate.  *Chacko*, 169 F.3d at 147.

Applying the *Blockburger* analysis to the instant indictment, it is the opinion of this Court that defendants are charged with two distinct offenses.  42 U.S.C.

§ 7413(c)(1) provides that

> Any person who knowingly violates . . . section 7412 of this
> title . . . shall, upon conviction, be punished by a fine
> pursuant to Title 18, or by imprisonment for not [sic] to
> exceed 5 years, or both.

The government charges that defendants violated subparagraph (f)(4) of 42 U.S.C.

§ 7412, which provides that

> No air pollutant to which a standard under this subsection
> applies may be emitted from any stationary source in
> violation of such standard . . . .

Asbestos is included in the listing of hazardous air pollutants at 42 U.S.C. § 7412(b)(1).

The standard allegedly violated by the defendant is the work practice

standard for asbestos, which is codified at 40 C.F.R. § 61.145.   Specifically, Counts II,

IV and VI of the indictment allege violations of 40 C.F.R. § 61.145(a)(1)(i) & (c)(3) and

Counts III, V and VII of the indictment allege violations of 40 C.F.R. § 61.145(a)(1)(i) &

(c)(6).  40 C.F.R. § 61.145(a) provides as follows:

> Applicability. To determine which requirements of
> paragraphs (a), (b), and (c) of this section apply to the owner
> or operator of a demolition or renovation activity and prior to
> the commencement of the demolition or renovation,
> thoroughly inspect the affected facility or part of the facility
> where the demolition or renovation operation will occur for
> the presence of asbestos . . . .

Paragraph (c) (3) provides that

> Each owner or operator of a demolition or renovation activity
> to whom this paragraph applies . . . shall comply with the
> following procedures:

* * *

-4-

> (3) When RACM[3] is stripped from a facility
> component while it remains in place in the
> facility, adequately wet the RACM during the
> stripping operation.

Paragraph (c) (6) (ii) provides that

> Each owner or operator of a demolition or renovation activity
> to whom this paragraph applies . . . shall comply with the
> following procedures:
>
> * * *
>
> (6)    For all RACM, including material that
>        has been removed or stripped:
>
> * * *
>
> (ii)  Carefully lower the material to the
>       ground and floor, not dropping,
>       throwing, sliding, or otherwise
>       damaging or disturbing the material.

40 C.F.R. § 61.145(a)(1)(i) applies paragraph (c) "to each owner or operator of a

demolition or renovation activity" involving at least 80 linear meters (260 linear feet) on

pipes.

Reading these provisions together, Counts II through VII of the indictment

charge the defendants with emitting asbestos during a demolition or renovation activity

involving at least 260 linear feet of RACM on pipes, with knowledge of the presence of

asbestos on the pipes,[4] by: (1) stripping the RACM without adequate wetting; and (2)

failing to carefully lower the RACM to the ground.  While each of these counts is

---

[3] "RACM" is the acronym for "Regulated Asbestos Containing Material."

[4] "[I]n a criminal prosecution under § 7413 for a violation of the asbestos work-practice standard,
the government need only prove that the defendant knew that the substance involved in the alleged
violations was asbestos; it need not establish the defendant's knowledge that the conduct proscribed by
the statute involved the kind and quantity of asbestos sufficient to trigger the asbestos work-practice
standard." *United States v. Weintraub*, 273 F.3d 139, 151 (2d Cir. 2001).

governed by the same criminal enforcement provision, *to wit*, 42 U.S.C. § 7413(c), the

elements by which the defendants can be subjected to the prescribed penalty are

distinct.[5]  Proof that the defendants released asbestos in violation of the work practice

standard requiring that RACM be adequately wet when stripped so as to establish guilt

as alleged in Counts II, IV and VI is not required to find defendants guilty of releasing

asbestos in violation of the work practice standard requiring that all RACM be lowered

carefully to the ground as alleged in Counts III, V and VII.  Conversely, proof that the

defendants released asbestos in violation of the work practice standard requiring that all

RACM be lowered carefully to the ground so as to establish guilt as alleged in Counts

III, V and VII is not required to find defendant guilty of releasing asbestos in violation of

the work practice standard requiring that RACM be adequately wet when stripped.

Thus, by stripping the RACM from the pipes without adequate wetting and by failing to

carefully lower the RACM to the ground, the defendants could be said to have

committed two separate offenses.  *See United States v. Universal C.I.T. Credit Corp.*,

344 U.S. 218, 220-21 & n.4 (1952) (suggesting that *Blockburger* precludes argument

that violation of three different sections of the Fair Labor Standards Act prescribes only

one offense).

---

[5] The Court notes that the question of whether separate statutory offenses arising from separate acts may be charged in an indictment is distinct from the question of whether separate punishments would be permissible.  *See Blockburger*, 284 U.S. at 302 ("The test is whether the individual acts are prohibited, or the course of action which they constitute."); *see also Albernaz v. United States*, 450 U.S. 333, 344 (1981) ("[T]he question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended); *Blockburger*, 284 U.S. at 305 ("Nor is there merit in the contention that the language of the penal section of the Narcotic Act . . . 'any person who violates or fails to comply with any of the requirements of this act' shall be punished, *etc.,* is to be construed as imposing a single punishment for a violation of the distinct requirements of sections 1 and 2 when accomplished by one and the same sale.  The plain meaning of the provision is that each offense is subject to the penalty prescribed . . . ."); *United States v. Gugino*, 860 F.2d 546, 549-50 (2d Cir. 1988) ("If the offenses are set forth in different statutes or distinct sections of a statute, and each provision or section unambiguously sets forth a punishment for its violation, then courts generally infer that Congress intended to authorize multiple punishments.").

**Multiplicity – Same Charge Based Upon Same Conduct Segmented By Day**

"When . . . the same statutory violation is charged twice, the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004). "The relevant inquiry in determining the unit of prosecution under a criminal statute is what Congress intended." *United States v. Coiro*, 922 F.2d 1008, 1014 (2d Cir. 1991). In conducting the inquiry, the Court is "informed by the rule of lenity, which dictates that in cases of ambiguity or doubt as to Congressional intent, only one offense may be charged." *Id., citing Bell*, 349 U.S. at 83.

In *Bell*, the Supreme Court held that the transportation of two women on the same trip and in the same vehicle constituted a single offense pursuant to provisions of the Mann Act stating that

> Whoever knowingly transports in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both.

349 U.S. at 82. Noting that "Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported," the Supreme Court concentrated on whether it explicitly did so. *Id.* at 83. In reaching its conclusion that Congress had not done so, the Court reasoned that

> When Congress has the will it has no difficulty in expressing it – when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make

-7-

> each stick in a faggot a single criminal unit. When Congress
> leaves to the Judiciary the task of imputing to Congress an
> undeclared will, the ambiguity should be resolved in favor of
> lenity.  And this is not out of any sentimental consideration,
> or for want of sympathy with the purpose of Congress in
> proscribing evil or anti-social conduct.  It may fairly be said
> to be a presupposition of our law to resolve doubts in the
> enforcement of a penal code against the imposition of a
> harsher punishment.

*Id.* at 83; *see also Coiro*, 922 F.2d at 1014-1015 (single meeting in which defendant spoke to two individuals would constitute one statutory violation where statute prohibited "endeavor" to obstruct investigation.)

In *United States v. Handakas*, the defendant was charged in two counts of intentionally structuring transactions exceeding $100,000 in order to evade tax reporting requirements.  286 F.3d 92, 98 (2d Cir. 2002), *overruled on other grounds by United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) *(en banc)*. The first count encompassed the period of May 1996 through May 1997, while the second count encompassed the period May 1997 through May 1998. *Id.* The government argued that the counts comprised "separate units of prosecution because the structuring occurred over a 24-month period and involved the concealment of more than $100,000 within each 12-month period." *Id.* The Court of Appeals for the Second Circuit determined that it was improper to segment the structuring offense because "no provision of the statute indicates that a single course of structuring can be segmented based on 12-month intervals (or any other intervals of time) or by the amount of funds in any interval." *Id.* The Court of Appeals concluded that the unit of prosecution was the transaction being

structured into multiple pieces so as to avoid the tax reporting requirements, rather than the individual transactions which were so structured. *Id.*

In *United States v. Urlacher*, the statute criminalized embezzlement of property valued at $5,000 or more which was owned by or under the control of a local government, where said government received benefits in excess of $10,000 under a federal program in any one year period. 784 F. Supp. 61 (W.D.N.Y.), *aff'd* 979 F.2d 935 (2d Cir. 1992). The government charged separate violations based upon the source of the funds allegedly embezzled, but the Court consolidated the charges, holding "that the 'unit of prosecution' . . . is '$5,000 or more,' from whatever source, in any one year period in which the government or agency at issue receives more than $10,000 in Federal aid." *Id.* at 64.

In the instant case, the government would have the Court read 42 U.S.C. § 7413(c)(1) as providing a separate offense for every day that section 7412 is violated. However, there is no such temporal reference contained within the statute. The absence of such a reference is telling in light of Congress' explicit prescription of certain civil penalties "per day for each violation" in other sections of the Clean Air Act. *See* 42 U.S.C. §§ 7413(b); (d)(1);(d)(3); (e)(2). For example, civil penalties for the violation of an applicable implementation plan or permit includes "not more than $25,000 per day for each violation." In contrast, criminal penalties for the knowing violation of an applicable implementation plan are punishable under the same provision at issue in this

case, *to wit*, "by a fine pursuant to Title 18, or by imprisonment for [sic] not to exceed 5 years, or both." 42 U.S.C. §§ 7413(c)(1). Having demonstrated its ability to make each day a unit of prosecution for certain violations,[6] this Court should not disregard Congress' failure to do so with respect to the violation at issue in the instant case. Accordingly, the Court recommends that Counts II, IV and VI be consolidated and that Counts III, V, and VII be consolidated.

## CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that the defendants' motions to dismiss (Dkt. #26 & 44), be **GRANTED IN PART,** so as to consolidate Counts II, IV and VI and Counts III, V, and VII, and that the remainder of defendants' motion to dismiss be **DENIED**.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

---

[6]     The Court also notes that Congress denominated "each unauthorized disclosure" as the unit of prosecution for the unauthorized disclosure of off-site consequence analysis information. *See* 42 U.S.C. § 7412 (r)(7)(H)(v)(II) ("a covered person that willfully violates a restriction or prohibition established by this subparagraph . . . . shall, upon conviction, be fined for an infraction under section 3571 of Title 18, (but shall not be subject to imprisonment) for each unauthorized disclosure of off-site consequence analysis information . . . The disclosure of off-site consequence analysis information for each specific stationary source shall be considered a separate offense.").

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

-11-

The Clerk is hereby directed to send a copy of this Report,

Recommendation and Order to the attorneys for the parties.

H. KENNETH SCHROEDER, JR.
**United States Magistrate Judge**

**Dated:**     **Buffalo, New York**
             **November 22, 2004**

-12-